STROMBERG MOTOR DEVICES CO. v.
BENECKE & KROPF MFG. CO.
(two cases).

BENECKE & KROPF MFG. CO. v. STROM-
BERG MOTOR DEVICES CO.
(two cases).

(Circuit Court of Appeals, Seventh Circuit.
October 19, 1925. Rehearing Denied
January 13, 1926.)

Nos. 3499, 3502.

**1. Patents ⬤╾83—Subject-matter of patent for which divisional application was not made until more than three years after required must be treated as abandoned.**

Under Rev. St. § 4894 (Comp. St. § 9438), subject-matter of patent for which divisional application was not made until more than three years after it was required should have been treated as abandoned.

**2. Patents ⬤╾328—1,166,734, claim 15, held invalid as uncertain and indefinite.**

Anderson patent 1,166,734, claim 15, for carburetor attachments *held* invalid as being uncertain and indefinite.

**3. Patents ⬤╾328—1,128,773, claims 1 to 6, 11, 17 to 22, and 25 to 27, held invalid.**

Goldberg patents 1,128,773, claims 1 to 6, 11, 17 to 22, and 25 to 27, for carburetor attachments *held* invalid.

**4. Patents ⬤╾328—1,335,389 held not infringed.**

Rayfield patent No. 1,335,389 for carburetor improvements *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; James H. Wilkerson, Judge.

Consolidated patent infringement suits by the Stromberg Motor Devices Company against the Benecke & Kropf Manufacturing Company, wherein defendant counterclaims. From judgments for defendant on the suits brought by plaintiff, and for plaintiff on defendant's counterclaims, both parties appeal. Affirmed.

Charles A. Brown and Arthur H. Boettcher, both of Chicago, Ill., for plaintiff.

Charles W. Hills and Charles W. Hills, Jr., both of Chicago, Ill., for defendant.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. Plaintiff appellant in Nos. 3499 and 3501 and defendant appellee in Nos. 3500 and 3502 is here called plaintiff. Defendant appellee in Nos. 3499 and 3501 and plaintiff appellant in Nos. 3500 and 3502 is here called defendant.

The District Court consolidated all cases, and, after hearing, dismissed them. There is here presented the question of infringement of plaintiff's Goldberg patent No. 1,128,773, where claims 1 to 6, 11, 17 to 22, and 25 to 27, are involved, and of plaintiff's Anderson patent No. 1,166,734, where claim 15 only is involved. Defendant's counterclaim brings into question the infringement of Rayfield patent No. 1,335,389.

Goldberg patent No. 1,128,773: December 17, 1910, Goldberg filed application, on which, on December 1, 1914, patent No. 1,119,078 was issued on certain claims. Within 60 days after filing that application, he was told that his 21 claims were drawn for no less than four separate inventions. A division was required, and applicant notified to cancel certain matters and modify his drawings. On March 19, 1914, more than three years after it was required, a divisional application was filed by Goldberg, for and upon which patent No. 1,128,773, in suit was issued February 16, 1915.

In 1909 Goldberg and one Tillotson made application and were granted, June 9, 1914, patent No. 1,099,293.

In his divisional application for the Goldberg patent in suit he said: "In patent No. 1,099,293, issued June 9, 1914, to Harry C. Tillotson and myself as joint inventors, there is set forth and claimed an arrangement wherein a secondary fuel inlet is provided, and wherein this secondary fuel inlet is permanently open to the carbureting chamber below the throttle. In that application, the height of the nozzle is relied upon to effect the necessary delay in the response of the secondary fuel nozzle, while in the present application, the secondary fuel nozzle is controlled by a valve which co-operates with the valve for the auxiliary air inlet so that the fuel nozzle is opened at the inception of the opening movement of the air valve or at a definite point after the air valve has opened."

That statement as to the Goldberg & Tillotson patent seems to be contradicted by the specification of that patent, viz.: "The response of the auxiliary fuel is delayed with the delay in the response of the auxiliary air valve until the greater suctions are attained and this delay may be made more definite by disposing the second nozzle at a higher level than the first nozzle. After the response of both auxiliary air and fuel, the air valve being properly retarded as above described, the co-operation resides in the fact that the issue from the nozzle varies with the aspiration, and the aspiration is determined by the opening of the air valve due to suction."

Further reference to the specification will show that the statement that the "secondary fuel inlet is permanently open to the carbureting chamber below the throttle" is also misleading, because the application shows that there was provided a so-called "bleeding means for positively preventing even the slightest issue from the fuel nozzle 89 before the auxiliary air valve is opened." The auxiliary fuel nozzle in the Goldberg patent in suit was no more effectively closed by the valve, or cap, over the end of it. In argument, counsel for plaintiff said: "In the Goldberg-Tillotson carbureter, such control of fuel as there is is obtained indirectly through the control of the air bleed, which delays response of the fuel, and, after response, involves the displacing of gasoline by air until the bleed is closed entirely. In the Goldberg structure the valve is applied directly to the solid column of gasoline, and the response is immediate from a minute supply when the valve begins to open, and increasing until the maximum capacity of the nozzle is reached."

There is no evidence in the record to support any such supposed differences. Plaintiff's expert witness was asked nothing about the Goldberg & Tillotson patent on direct examination, and on cross-examination plaintiff succeeded in preventing its witness from answering a question involving that identical matter.

Specification of the Goldberg & Tillotson patent, speaking of the bleeding means, says: "This feature includes means for adjustment by which the bleeder may be brought into and out of action and by means of which, when the bleeder is in action, the response of fuel from the nozzle 89 may be definitely and adjustably delayed even somewhat beyond the opening of the auxiliary air valve."

Claims 7 and 8, and perhaps other claims, of the Goldberg patent show clearly that there is an adjustable regulation.

Pointing out the difference between the Goldberg & Tillotson patent and the Goldberg patent in suit, defendant's witness Kinealy said: "The principal difference between the auxiliary carburetor of the Goldberg & Tillotson patent and the auxiliary carbureting element of the Goldberg patent in suit lies in the fact that in the Goldberg & Tillotson the auxiliary fuel inlet is not closed nor is it controlled in any sense other than the flow of the fuel through it is controlled, while in the Goldberg patent in suit the auxiliary fuel inlet is physically controlled by a valve that is seated upon it and

it is closed by physically seating a valve on it."

The flow of the fuel being controlled, the means of control, in this case, is immaterial, because we are of opinion that in the Goldberg patent there was involved in this respect nothing more than simple mechanical operation that was not invention.

Plaintiff, in argument, has attempted to show that the Goldberg & Tillotson carburetor had a defect, viz., in that there was a back fire which created an intolerable fire hazard, and that that defect was remedied in the Goldberg patent in suit. There is no justification in the record for such a contention. The record shows that the Goldberg & Tillotson carburetor was used on a Stoddard-Dayton car. Plaintiff's president testified:

"Q. Was there any difficulty encountered in the operation of the car with this type of carburetor? If so, what? A. There was a danger of fire on account of backfiring by reason of the peculiar construction of this particular motor.

"Q. Please state what was the success of the carburetor referred to, that is, the Goldberg & Tillotson, aside from this fault that you have mentioned. A. It was very satisfactory in its operation."

That was a motor, not a carburetor, difficulty, and there is no evidence or reasonable inference that the difficulty would have been remedied by the use of the Goldberg invention in question.

A reading of the 27 claims of the patent and the analyzation of them by plaintiff's expert witness Webster convinces us that the applicant, having no real substance to present in the application for the patent in question, was endeavoring to make a showing by the use of many words and the multiplication of claims.

[1] In the prosecution of the three patents, viz., the Goldberg & Tillotson patent, the original Goldberg patent, of which the patent in suit is divisional, and the patent in suit, resort was had to every possible means of delay, and, in the face of section 4894 of the Revised Statutes (Comp. St. § 9438), applicant filed a divisional application more than a year after the subject-matter thereof should, under that section, have been treated as abandoned.

Anderson Patent No. 1,166,734: Claim 15, which reads as follows, is involved: "15. In a carburetor, (1) a carbureting passage, (2) a throttle therein, (3) a fuel chamber feeding into said passage, (4) an auxiliary chamber fed from said fuel chamber and al-

so feeding into said passage, and (5) means for positively pumping the fuel from said auxiliary chamber into said passage, (6) the operation of said pumping means being induced by the opening of the throttle." (Figures in parentheses are ours.)

[2] We are of opinion that this claim is invalid because it is uncertain and indefinite. The specification numbers and names the different parts shown on the drawing of the patent, and the only thing named in the specification as an auxiliary chamber is 17. 26 is called a diaphragm chamber and 28 is called a fuel well. The fifth element of the claim is "an auxiliary chamber fed from said fuel chamber and also feeding into said passage." The auxiliary chamber 17 of the patent is fed from the fuel chamber 8 and, in turn, feeds into the passage through the opening 22 and the pipe 24. Disregarding the names applied in the patent, plaintiff treats the fuel well 28 as the "auxiliary chamber" and contends that, under the conditions named, it feeds, through 29 and 9, into the nozzle. Here, then, are two chambers which might respond to the fifth element of the claim; the one the auxiliary chamber of the patent and the other called an auxiliary chamber by plaintiff.

Again, the last element, or statement, of the claim is "the operation of said pumping means being induced by the opening of the throttle." This cannot be true, because the normal position of the diaphragm is down, as shown in the drawing. The first and most important element in the alleged pumping process would be the raising of the diaphragm, and, theoretically, that would be induced by the turning over of the engine with the throttle closed. The theory of the plaintiff is that the operation of the engine with the throttle closed creates a vacuum in the carbureting chamber, and that fuel would be drawn up so that by suction through the pipes 24 and 25 a vacuum would be created in the diaphragm chamber 26; and that by reason thereof the diaphragm 27 would snap up from its normal position, and by opening the throttle and thereby destroying the vacuum at the opening of the pipe 24 fuel would drop back through the pipes 24 and 25 to the diaphragm chamber 26, filling the vacuum and permitting the diaphragm to snap down, thus forcing the fuel from the fuel well 28, through the passageways 29 and 9, up through the nozzle 6. This device was never operated, and we are of opinion that there are many reasons why it would not operate.

(a) In the auxiliary tank 17 the fuel level is much above the outlet 22, and the vent 20 permits a normal atmospheric pressure, so that no vacuum is created above the fuel in 17. By the natural action of the elements, therefore, the suction through 24 would pull the gasoline out of 17 and not through 25 from the diaphragm chamber 26. This is recognized in the specification: "If the engine were to be turned over on closed or nearly closed throttle, the entire or at least high vacuum thus produced would be effective through the pipe 24. * * * This would draw a high charge of fuel from the auxiliary reservoir 17, as determined by the initial fuel level up through the pipe 24 and into the engine."

It seems certain that, with this operation, there would be no drawing of fuel through the pipe 25 against the influence of a vacuum which it is said that action would create in chamber 26.

(b) The supposed operation could create no vacuum in the diaphragm chamber, which is a dead end with no opening other than through the pipe 25. There is no air vent. The fuel would pass through the opening 22 and the pipe 25, and, so far as could be done, by compression of the air, would fill the diaphragm chamber, and, if there was a suction of the fuel out of the diaphragm chamber through the pipe 25, the air would still remain in the diaphragm chamber with its normal pressure, unless and until there was an exhaustion of the fuel passing through the opening 22 and the creation of a vacuum in the auxiliary chamber 17. Practically, this could not happen.

(c) Plaintiff's expert, beyond saying that, in the operation described, there would be a vacuum created in the diaphragm chamber, made no attempt to show how the air would be exhausted, but he did say that he thought the air in the fuel well 28, which is a dead end, and has no outlet except through the inlet 29, would ultimately, in an undefined time, be discharged by some sort of breathing process. That conclusion seems to us to be merely an unfounded speculation.

(d) On cross-examination of plaintiff's expert, starting with the assumed fact that, after the opening of the throttle, there would be a snapping down of the diaphragm which would produce one spurt of oil through the nozzle 6, an effort was made to have the expert show how, with the nozzle open and the throttle open, the fuel well would become refilled and how there could be any further action of the diaphragm. The responses were

convincing that there would be no refilling of the well and no further action of the diaphragm without at least closing and again opening the throttle.

Defendant's counterclaim: Defendant has a counterclaim in which it is charged that plaintiff infringes certain claims of defendant's Rayfield patent No. 1,335,389. This counterclaim was not seriously urged upon oral argument. We are convinced, upon examination of the record, that there is no infringement of those claims.

[3, 4] We conclude, therefore, that claim 15 of the Anderson patent No. 1,166,734 is not only invalid, but that it is not infringed; that the Goldberg patent No. 1,128,773, as to the claims involved, is invalid; and that the Rayfield patent No. 1,335,389 is not infringed by the device of the plaintiff.

The decree of the District Court should be and is affirmed.